Can you proceed? Good morning, Your Honor. Emily Kuwahara for Plaintiff Leslie Crawford. And with me at council table is Ms. Alice Halpertuka. And I'd like to reserve three minutes for a rebuttal, Your Honors. May it please the Court. This is a case about a family seeking justice for a mentally ill black man who was fatally shot by the police. And here, because of emotional limine, we have a jury that was not given all of the facts and the full picture that it needed to consider the case before it. And it was not given the frame of reference that would have potentially led to a different result. They did not get to hear that it was possible that Mr. Dozer, who was the deceased, could have had a mental disorder. Instead, what they got, if you read the trial transcript, it was implied, but it was very effectively so, a very false narrative. The defense ultimately painted a picture of a man who was on PCP rather than a man who needed help. And that prejudice is apparent in defense counsel's argument where, in the closing, he repeats over and over and over, there was no evidence of mental illness, there was no evidence of mental illness, and there was zero evidence of mental illness. And so the jury came away with a very slanted picture of what happened that day. And if you are the jury, after hearing all of that and having the evidence in Ms. Crawford's testimony about her son's past being precluded, you are going to believe that there was no possible way that the last factor in the jury instructions, which is whether the officer should have, whether it should have been apparent to Officer Stringer that Mr. Dozer was having an emotional disturbance, the jury never would have considered that factor. And therefore, we asked the court to send this case back for a new trial. So I'd like to address some of the questions that have come up in the briefing. And one of the key ones is, well, why isn't this expert testimony? And that's the crux of the district court's order, is this should have been expert testimony. Well, we would agree, Your Honors, that if the testimony was Mr. Dozer was suffering from schizophrenia and it was the precise diagnosis that was at issue, we'd agree that that would be expert testimony. However, there are aspects of Ms. Crawford's testimony, Ms. Crawford being the plaintiff and Mr. Dozer's mother, that were, in fact, relevant, and that were her observations of her son. And that's all demonstrated in the excerpts of her deposition that are in the record, is that right? Yes, Your Honor. Was there any other proffer of what she would have testified to? Had she been allowed to testify? No, Your Honor, not that I'm aware of in the record. Okay. But I think that the proffer provides for the bare bones of what she would have been able to testify to, and had she been on the stand, the facts would have been fleshed out a little bit more than the bare bones that was in the deposition testimony, Your Honor. Because, of course, the deposition testimony was taken by opposing counsel. Great. Part of the issue in the case is whether even accepting that the evidence should have come in, whether it was relevant to the officer's perception. How do you respond to that? Yes, Your Honor. Because the officer obviously would not have any knowledge of the history of his case or the perceptions that his mother had. Yes, Your Honor. Understood that the officer would not have had Ms. Crawford's knowledge. However, the standard is what should have been apparent to Officer Stringer as well as what he perceived. And the issue here is that the jury deserved to hear that mental illness was a card that was available. And so without that anchoring testimony, what you have is expert testimony explaining what one officer does when faced with someone who could potentially be mentally ill. But you have no fact on which to anchor that. You have no ability for the jury to have considered, oh, this is something that I should consider. If you look at the video that was submitted to the court, the actual interaction between Officer Stringer and Mr. Dozer is off to the side. You can't see exactly what happened. And so all you have as the jury is you're supposed to paint a picture based on your testimony that you hear, the fact witnesses that appear. Mr. Dozer, unfortunately, was deceased, so he couldn't tell his side of the story. He couldn't say, you know, I hear voices in my head. So it's important that the jury have that one fact that, yes, it was possible that this man had a mental illness. And so when they went back to consider whether it should have been apparent to Mr. Dozer or Officer Stringer, they needed that fact. And we concede, Your Honors, that you could not use that evidence to argue that he was acting in a certain way that day. That's understood. But without that anchoring testimony, the plaintiff's expert testimony results just floating out there. And the jury is ultimately going to conclude, especially after hearing defense closing argument, that there's no evidence of mental illness. If this were a case about mental illness, you would have heard something. They would have entirely discounted that. And that was prejudicial, Your Honor. And so the purpose of this testimony would have been limited. We're not arguing that it should have had an expansive role in this case. And if you look at all of the other cases that have been cited, it is a factor that is considered. In, for example, in the Sheffy case in the Sixth Circuit, it was in that case, in the totality of the circumstances, the court concluded that all other factors outweighed any mental disturbance. But it still was considered, Your Honor. And so to exclude that entirely was to preclude the jury from even considering that as a factor, Your Honor. And didn't the defense counsel exploit that lack of evidence in the closing argument? We would agree with that characterization, Your Honor. I think it was overzealous. Well, no, I'm not saying pejoratively. I'm just saying I didn't mean exploit pejoratively. What I meant was didn't defense counsel point to the lack of evidence of the decedent's mental illness during closing argument? Yes, Your Honor. Yes, Your Honor. And we believe that that did create, that that sort of exemplifies the prejudice that was created by the motion eliminate. Because he not only exploited the lack of evidence of that, but he also knew that the toxicology report came back clean. And also, and yet pressed this narrative that the officer Stringer believed that Mr. Dozer was on PCP. And granted Officer Stringer's testimony, we understand that we have to look at what the officer perceived. But the part that's missing here is what he should have perceived. And you're exactly right, Your Honor, in that he exploited that hole in the evidence in the closing argument to direct the jury to consider, oh, the only thing that he should have perceived was a man who was on PCP, rather than a man who really needed help. And in terms of, I'd like to also address one other point in the opposing counsel's briefs, which is that there was no prejudice. You know, even if this was there, there's no prejudice. Because at the end of the day, it was perfectly reasonable for Officer Stringer to react as he did, given the circumstances that were facing him. Well, respectfully, that question is one for the jury and not for this court. And that in all of the cases cited, the police had considered whether the decedent was emotionally disturbed, and also the court considered whether the decedent was emotionally disturbed. And here we have a case where the jury, as a practical matter, was not allowed to consider that. And as a practical matter, was directed not to consider that. And so we submit, Your Honors, that this, that whether or not a different outcome would have come out, is for the jury, for the next jury to decide, and not for this court to decide. And that this argument that there is no prejudice because of what, that there is no prejudice here, is not really well taken. The law does require the police to consider what other tactics, if any, were available. And that is something that the jury also should have been allowed to consider here. And they were not allowed to consider that, given the motion to eliminate, Your Honor. Thank you, counsel. May it please the Court. My name is Mick Martirosian. I was the trial counsel in this case, and I represent the appellees in this matter, Your Honor. I strongly believe that the evidence in the jury, according to the law, is directed to evaluate the evidence presented, not with 20-20 hindsight, but in an objective manner as to what a reasonable officer would have done under the circumstances that were presented by the evidence in this case. And this court, the trial judge, Judge Boone, and the jury, and the evidence that was allowed, was focused on that issue. The issue of mental illness was unknown to the officer. There was no 911. Let me ask you this. Aren't officers trained to be alert to possible mental illness? Yes, of course. And this officer had that training. Yes, he had that training. And in this case, even though there was no designated expert on the subject of mental illness, we really don't know if that's true or not, that there was a medical diagnosis of schizophrenia and whatever the manifestations of that is. We don't know that. We have to go on what the officer knew in doing his job for the protection of the public. We don't understand, but listen to the question. Does your position extend — suppose that they had designated a mental health expert who was going to testify that this gentleman suffered from schizophrenia. Would your — does your position go so far as to say that he couldn't testify, that they couldn't call an expert witness to testify to that? I think the first test would have been whether or not it was relevant or not in the eyes of the law. Well, let me back up. In your view, is it not relevant? It's not relevant. Why? I don't understand. Our case law seems to suggest that it is. It's not relevant because this was not information available to the officer. So in other words, somebody who seeks help, calls 911, has to, in order for the officer to consider the possibility of mental health issues, the caller has to say, this defendant is exhibiting signs of mental disturbance. What are signs of mental disturbance? Maybe it was drugs. Maybe it was the type of drug that causes someone to be very aggressive. But we know from the record there were — he didn't have any drugs in his system. I'm sorry, Your Honor. The toxicology report said there were no drugs in his system. Right. There were no drugs, but — My question for you is, if it's not relevant, why did you argue in closing? Well, because the Court allowed the plaintiff's expert to talk about the standard of what an officer's training is in regard to mental illness, meaning that that issue was present. And there was — I felt there was an implication of it. Right. So you tried to keep mental illness out of the case. You tried to — you kept the toxicology report out of the case. And then you argued there was no evidence of mental illness. No, Your Honor. The Court — I did move to exclude evidence that wasn't known to the officer at the time of this incident. And the Court, in somewhat of a compromised state, allowed plaintiff's police and procedures expert to talk about the subject of mental illness. I didn't know if the jury was going to start to speculate if there was an implication of mental illness. What we have to remember in this case, Your Honor, is the call, the 911 call, was that a member of the public was being threatened. You know that. And so when the officer arrived, he didn't pull any weapon, Your Honor. He walked over to where Mr. Dozier was just to investigate what the issue was. And it was at that time that Mr. Dozier was aggressive, came at him with this — Bicycle lock. Bicycle lock. Not much of a bicycle lock. Right. And came forcefully at him. And the officer even eyewitnesses, Your Honor — And if that had been your argument, I'd be sympathetic. But your argument was there's no zero evidence of mental illness. And that was misleading to the jury. That's my concern. How do I respond? Then why did the Court allow the plaintiff's procedures expert to even raise the subject of training on that subject? The district court judge acknowledged that mental illness was relevant. Okay. And there was testimony on the issue of training. But then he went so far as to say she couldn't testify, the mother couldn't testify, as to what she had observed in the past. And, Your Honor, how is it misleading when there isn't any evidence of mental illness? Well, you knew there was evidence because you took the deposition of the mother. You knew there was evidence on the record. You knew that the toxicology reports said he didn't have drugs. And if you made the argument that, look, it doesn't matter, perceptions matter, and this guy was coming at him, I think that's a pretty good position. But you, knowing, having this knowledge, argued there was no evidence of mental illness. I didn't have any knowledge that that was specifically what the diagnosis was, that he was suffering from a mental illness, Your Honor. Did he obtain his medical records? No. There was no evidence that I had available to me that he was schizophrenic. There was a claim that he was. So prior to trial, you didn't, through discovery, you didn't obtain all his medical records. There was no, there were no records that I was, that I can recall that I was aware of that confirmed that he was schizophrenic. It was not an issue in terms of what the perspective of the officer was at the time that he responded to the call. The public was being threatened, and then when the officer arrived, he was being threatened with deadly force. Eyewitnesses even testified that witnessed what happened. There was nothing else that the officer could have done. How would mental illness have changed anything? Well, I understand that argument. But when you say that there is no evidence and you took the deposition, did you disbelieve his mother when she said he was on medications, he'd been on a turning point, he'd been counseling and treatment? And why didn't they designate her as an expert, Your Honor? I said, did you disbelieve her? I'm sorry? Did you disbelieve her when you took her deposition? I had no reason to believe her. She was a plaintiff in a case seeking damages, Your Honor. And she says he had voices, he was talking to himself, he was going through, et cetera, et cetera. I mean, did you believe her? I don't know then why the plaintiffs didn't designate an expert and designate her as well. I mean, how am I — Didn't the plaintiff want to present that testimony? Didn't — in other words, didn't the plaintiff want to present the mother to testify to what Chief Judge Thomas just referenced? But, Your Honor, the mother isn't qualified to testify as to a medical diagnosis. That's not my question. You keep answering a question that hasn't been asked. The question — the mother is just describing a behavior. She's not making a diagnosis. She is saying that my son did X, Y, and Z, and you moved in limine to exclude that, right? Correct. Okay. Yeah. She was being presented on the issue to testify that he was schizophrenic, and that was one of the reasons why she was excluded. She wasn't designated and she wasn't qualified. I don't know — Right. But she could have — you could have — I would understand a ruling. She can't testify to a diagnosis because she's not an expert, but she can testify to behavior. She could testify, I saw my son do X, Y, and Z. You don't need to be an expert to do that. You just need to have eyes and the power of speech, right? I think that that is an unfair question when the plaintiff's had the opportunity. They were represented by capable counsel to designate a medical expert. You're not answering my question. You moved to exclude the mother from saying, I saw my son do X, Y, and Z. How is it relevant when there isn't a medical diagnosis to attach to that? How is it relevant as to prior conduct that we don't even know is consistent with any conduct that was demonstrated at the time of the incident? The officer was there to protect members of the public who were being threatened by this man, and then the officers were being threatened, and there was no way out for him. There was no way out. That's a great jury argument, but we're talking about evidence rules 401 and 402. And I think what your colleagues are arguing is that evidence that the son was acting in a certain manner at time one makes it more likely. It isn't dispositive, but that's not what rule 401 and 402 are about. It makes it more likely that he was acting in that manner at time two. There was no evidence that he was acting consistent with the conduct on previous occasions that the mother was going to testify to. There sure was, in the sense that he was talking to himself at the scene. That's what she testified about in her deposition, that he would talk to himself, shout at himself, and that's what he did at the scene, wasn't it? When the officers arrived at the scene, he could hear Mr. Dozier say words to the effect, if we're going to do this, let's do this. That's the words that the officer heard him say, challenging directly to the officer. If we're going to do this, then let's do this. And the officer had no gun drawn. He was just going to investigate, to talk to Mr. Dozier, and all of a sudden this man is in his face threatening his life. There are witnesses that witnessed what happened and said there was nothing else that could have been done. That's not true. Wasn't there a witness who said? Some of the witnesses said that, but didn't another witness say that the decedent was not approaching the officer and did not raise the bicycle lock above his head? No. There was an issue as to how high the bicycle lock was being held, but I don't remember a witness coming out and saying that the officer wasn't justified in what he did, if that's what the question is, Your Honor. Well, just so I understand your position, I want to make sure I have it down. I'm a little bit concerned. Even if you assume that they had designated an expert mental health witness, I want to know what your position is as to how far that witness could testify. I think if the expert witness who was qualified to render a medical diagnosis took the facts of what existed at the time of the incident, and in regard to interviews or what the mother said in terms of prior conduct, and rendered a medical diagnosis as to what that was, then I think that that's how expert testimony on the issue should have been presented. Well, I'm not going to say no. So the expert could get up on the stand and testify that the victim, the decedent suffered from schizophrenia. And schizophrenia is manifested in the following ways. All right. That's fine. You would agree that an expert could testify to that? Yes. An expert can testify to that, but the officer had no knowledge of that at his arrival. But that's an argument, though. It's not an argument, Your Honor. It's a fact that existed. I really don't understand. On the one hand, you say none of this, what the officer didn't know is not relevant. And then you just acknowledge that an expert could testify. No. I want to be clear. What the officer knew at the time of the incident, at the scene, is very relevant. And he did not know or have any knowledge that there was any issue of mental illness on the part of Mr. Dozier. Therefore, even a psychiatric expert could not testify. Is that what you're saying? I'm not understanding the Court's question. If there was a designated one. Would you have opposed the introduction of expert psychiatric testimony? I would have opposed that. Yes, I would have, Your Honor. That's the question. That's the question. Okay. I'm sorry I didn't phrase it. The Chief is better. That's why he's Chief. No, no, I understand. Yes, I would have opposed it because it's not something that the officer knew at the time of the incident. The 911 call. Right. Let me just posit this. I mean, their theory was officers are trained to observe mental illness or to respond to mental illness in a different way and to recognize the symptoms. And the officer didn't recognize the symptoms at the scene. That was their theory, right? Yes, that based on the facts that presented themselves gave no indication to Officer Stringer that this suspect that I want to talk to that's been causing these, threatening the public, is suffering from some type of mental illness and, therefore, I must get out of the way, go sit in my car, call for backup. And during that period of time, who knows what could have happened during that period of time. No, I understand that. But, I mean, their theory was officers are supposed to respond differently to in cases of suspected mental illness than, say, suspected PCP use, right? Yes. Okay. Generally speaking, yes. Not presented with the evidence that he had that mental illness was a possibility or consistent with his past behavior. And the jury was left with the impression that it was a PCP incident when it wasn't, right? Well, no, I don't think so because of the time element involved. I think that's what the court is failing to acknowledge. This happened so quickly that even if the training regarding mental illness would have applied and Officer Stringer considered that this man is suffering from some type of mental illness, how does it change anything when the suspect starts coming at him with a deadly weapon after he had threatened other members of the public that are still right in that same proximity? No, I understand your jury argument. I'm just trying to parse it out in terms of how the trial came down. But I've taken you close to the end of your time. I'm sorry, Your Honor. And I know you keep mentioning a jury argument, but I keep bringing it back to the law that the evidence must be focused on what a reasonable officer knew at the scene at the time of the incident as opposed to evaluating it in a 20-20 hindsight perspective. And the evidence in this case focused on that, Your Honor. Thank you. Thank you, Your Honor. A few brief points, Your Honor. I wanted to correct a couple of statements about the record just so we have them. The first is that counsel stated that he didn't know or didn't have any evidence of mental illness. I point to ER 219, Excerpt from Record, page 219, which is the deposition testimony where he asks Ms. Crawford, okay, now we know that Michael had some issues with schizophrenia. Answer, yes. Question, and other issues.  Another, just a clarification of the record here, is that I believe it was Judge Thomas pointed out that there was a witness that said that Mr. Dozer was not acting in a threatening manner. And you are, yes, I'd like to say that this is correct. ER 130. Judge Feinerman. Oh, Judge Feinerman. Apologies, Your Honor. That is correct. There was a witness who did testify that she saw Mr. Dozer holding the object not over his head, but at the side of his body and never moved it above his head. The witness was cross-examined, but there is a conflict in the facts for the jury to consider, and that is, again, something for the jury to consider in context. Didn't that witness also testify that Dozer was just standing there? Yes, Your Honor. Okay. So there definitely was a conflict in the factual record as to what the eyewitnesses saw and how Mr. Dozer was acting at the time. In terms of what Officer Stringer knew at the time, the law is clear that he also considers, the jury gets to consider what he should have known, what he knew, what he should have been aware of. And here, the jury needed to know that mental illness was an option that was on the table. I believe the Court understands that argument, so I won't belabor that point. As to the final issue, as to the expert testimony, again, we didn't need an expert here. Expert testimony may have been appropriate, but it wasn't necessary, because it didn't matter whether Mr. Dozer had schizophrenia, bipolar, some other disease. What we needed to know was something to anchor the expert's testimony, expert testimony being the police procedure's expert, that would allow the jury to have the full story, the full story of what happened that day, instead of a very slanted narrative about Mr. Dozer, who was, by the end of the trial, was implied to be a drug user. And rightly or wrongly, people understand those facts to be different. Whether you are faced with somebody, a man on PCP versus a man with a mental illness, the jury is going to think about that differently, and they were not able to see the confrontation on video, and that impacted their deliberations, and there was prejudice there. How would your expert, Defoe, have connected the dots between what the mother described of Mr. Dozer's behavior and how Mr. Dozer might have presented himself on the day in question? I think the police expert would not have been allowed to come up high on that ultimate tying together of the facts, but the jury was entitled to know that Mr. Dozer was suffering from some kind of a mental illness, so that when they considered the expert testimony, they would have that in mind, and that would have informed their analysis of whether Officer Stringer acted reasonably when he arrived on the scene and within seconds was confronting Mr. Dozer, and that ended up in the fatal shooting of Mr. Dozer. And so the testimony would have been more of an anchor to the expert's testimony, because without that, the expert's testimony is just floating out in space, and it's irrelevant, and if you're a jury, imagine you might feel like the Plaintiff's Counsel has totally led you down this path of mental illness, and it's like, well, there's no evidence. Why did we waste all of our time listening to that? That was weird. I think that's the impression you come away with and not an impression of, okay, this is a factor I really need to consider. This informs whether or not Officer Stringer acted reasonably, whether he had a least intrusive method in which to resolve this situation, and that was a question for the jury to consider and something they ought to have been able to consider and deserve to know, Your Honor. So let's assume that the testimony should have come in, and why wasn't any error harmless given the fact that the jury was properly instructed on the use of force, they heard the officer's testimony, the testimony of the witnesses, and reached its conclusion? Your Honor, I believe it was not harmless because the jury didn't have the full set of facts, and the last factor in the analysis, it is a totality of the circumstances analysis, but the last factor is whether it should have been apparent to Officer Stringer that Mr. Dozer was emotionally disturbed and whether that informs the reasonableness of his action, and that factor was not, but given the way the testimony came out in the closing arguments, I think the jury would not have considered that, and that is prejudicial, and it should have been considered, and it tainted the verdict, Your Honor. You know, whether when you send it back you would get a different result, I can't predict the future, but I think it's more likely than not that the jury did not consider that evidence and came to an incorrect conclusion, Your Honor. Thank you, Counsel. Thank you for your pro bono representation. Thank both for your arguments today, and the case just argued will be submitted for decision. We'll proceed to the last case on this morning's oral argument calendar, which is Beach v. Liberty Assurance Company.
judges: Thomas, Paez, Feinerman